IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>JOSE R SOTO VILLANUEVA JOSE R. SOTO VILLANUEVA; JOCELINE ORTIZ POLACO<br><br>Debtor | CASE NO. 16-08627 (ESL)<br><br>CHAPTER 13 |
| IN RE:<br><br>ERIC NIEVES LOPEZ<br><br>Debtor | CASE NO. 17-0255 (ESL)<br><br>CHAPTER 7 |
| IN RE:<br><br>CARMEN MILAGROS MALDONADO DELGADO<br><br>Debtor | CASE NO. 19-04425 (ESL)<br><br>CHAPTER 7 |
| JOSE R. SOTO VILLANUEVA; JOCELINE ORTIZ POLACO; ERIC NIEVES LOPEZ; CARMEN MILAGROS MALDONADO DELGADO<br><br>Plaintiffs<br><br>vs.<br><br>FIRST BANK PUERO RICO; SANTANDER FINANCIAL SERVICES, INC.<br><br>Defendants | ADVERSARY NO. 22-00023 (ESL)<br><br>RE: WILLFUL VIOLATION OF THE DISCHARGE INJUNCTION; ACTUAL AND PUNITIVE DAMAGES<br><br><br>FILED & ENTERED DEC/05/2024 |

**OPINION AND ORDER GRANTING MOTION TO DISMISS**

This case is before the court upon the *Motion to Dismiss Plaintiffs' Amended Class Action Complaint Under Fed. R. Civ. P. 12(b)(6) and 12(b)(7)* (the "*Motion to Dismiss*", dkt. #96) filed

-1-

by Santander Financial Services, Inc. ("Santander Financial"), the Debtors' opposition (dkt. #119), and Santander Financial's reply (dkt. #129).

For the reasons discussed below, the *Motion to Dismiss* (dkt. #96) is GRANTED.

Factual and Procedural Background

I.     The Bankruptcy Case of Plaintiff Soto, Bankr. Case No. 16-08627

1.     On October 29, 2016, José R. Soto Villanueva and Joceline Ortiz Polaco ("Plaintiff Soto") filed a voluntary petition under Chapter 13 of the Bankruptcy Code. See Bankr. Case No. 16-08627, dkt. #1.

2.     "BC Santander" was scheduled as a creditor holding unsecured claims in the amounts of $41,380.00 (#8009) and $5,143.00 (#5521), and an interest in a checking account with "Santander Bank" was disclosed. See Bankr. Case No. 16-08627, dkt. #1, p. 24-25 (*Schedule E/F*), p. 15 (*Schedule A/B*).

3.     Notice of the bankruptcy filing was sent to BC Santander at "PO BOX 362589, San Juan, PR 00936-2589". *Certificate of Service*, Bankr. Case No. 16-08627, dkt. #7.

4.     On February 1, 2017, "Banco Santander Puerto Rico" filed Proof of Claim No. 5 in the unsecured amount of $42,575.00, and disclosed its notice address as follows: "PO BOX 362589, San Juan, PR 00936". Proof of Claim No. 5, Bankr. Case No. 16-08627, p. 3.[1]

5.     On June 14, 2017, Plaintiff Soto filed an *Objection to Proof of Claim Filed by First Bank de PR*, which was granted as unopposed on August 23, 20217. See Bankr. Case No. 16-08627, ECF Nos. 41, 46.

6.     On October 20, 2021, the Court entered an *Order of Discharge* under 11 U.S.C. § 1328(a). See Bank. Case No. 16-08627, dkt. #93.

7.     Notice of the *Order of Discharge* was sent to BC Santander at "PO BOX 362589, San Juan, PR 00936-2589". *Certificate of Service*, Bankr. Case No. 16-08627, dkt. #94.

---

[1] Creditor listed as "BC Santander" in Claims Register.

II.    The Bankruptcy Case of Plaintiff Nieves, Bankr. Case No. 17-02550

8.    On April 12, 2017, Eric Nieves Lopez ("Plaintiff Nieves") filed a voluntary petition under Chapter 7 of the Bankruptcy Code. See Bankr. Case No. 17-02550, dkt. #1.

9.    "Banco Santander" was scheduled as a creditor holding an unsecured claim in the amount of $843.66 (#7702) and "Banco Santander de PR" was scheduled as a creditor holding an unsecured claim in the amount of $495.62 (#6245). See Schedule E/F, Bankr. Case No. 17-02550, dkt. #1, p. 25.

8.    Notice of the bankruptcy filing was sent to Banco Santander and Banco Santander de PR at "PO BOX 362589, San Juan, PR 00936-2589". See Certificate of Service, Bank. Case No. 17-02550, dkt. #6.

9.    On May 17, 2017, the Chapter 7 Trustee filed a Report of No Distribution. See Bankr. Case No. 17-02550, dkt. #14. 9.

10.    On October 20, 2021, the Court entered an Order of Discharge under 11 U.S.C. § 727. See Bankr. Case No. 17-02550, dkt. #22.

11.    Notice of the Order of Discharge was sent to Banco Santander and Banco Santander de PR at "PO BOX 362589, San Juan, PR 00936-2589". Certificate of Service, Bankr. Case No. 17-02550, dkt. #24.

III.    The Bankruptcy Case of Plaintiff Maldonado, Bankr. Case No. 19-04425

12.    On August 2, 2019, Carmen Maldonado Delgado ("Plaintiff Maldonado") filed a voluntary petition under Chapter 13 of the Bankruptcy Code. See Bankr. Case No. 19-04425, dkt. #1.

13.    "Banco Santander" was scheduled as a creditor holding an unsecured claim in the amount of $23,305.00 (#46xx) and "Banco Santander Visa" was scheduled as a creditor holding an unsecured claim in the amount of $450.49 (#1689). See Schedule E/F, Bankr. Case No. 17-02550, dkt. #1, p. 28.

14. Notice of the bankruptcy filing was sent to Banco Santander and Banco Santander Visa at "268 PONC E[sic] DE LEON, San Juan, PR 00918" and "GPO BOX 2589, San Juan, PR 00936", respectively. See *Certificate of Service*, Bankr. Case No. 19-04425, dkt. #8.

15. On September 4, 2019, "Santander" filed Proofs of Claim Nos. 1 and 2 in the unsecured amounts of $23,294.70 and $501.26, respectively, and disclosed its notice address as follows: "268 PONC E[sic] DE LEON, San Juan, PR 00918". Proof of Claim No. 1, Bankr. Case No. 19-04425, p. 1; Proof of Claim No. 2, Bankr. Case No. 19-04425, p. 1.[2]

16. On May 17, 2021, the case was converted to Chapter 7. See Bankr. Case No. 19-04425, dkt. #29.

17. On June 23, 2017, the Chapter 7 Trustee filed a *Report of No Distribution*. See Bankr. Case No. 19-04425, dkt. #37.

18. On August 24, 2021, the Court entered an *Order of Discharge* under 11 U.S.C. § 727. See Bankr. Case No. 19-04425, dkt. #44.

19. Notice of the *Order of Discharge* was sent to Banco Santander and Banco Santander Visa at "268 PONC E[sic] DE LEON, San Juan, PR 00918" and "PO BOX 2589, San Juan, PR 00936". *Certificate of Service*, Bankr. Case No. 19-04425, dkt. #46.

IV.     Facts Common to Each Plaintiff

20. On or about February 1, 2022, that is, after the entry of each discharge order, a letter was allegedly issued to each Plaintiff (the "Letter") stating that (a) "Luna acquired the Bankruptcy Account", (b) "the Bankruptcy Account 'remain in full force and effect and are now enforceable by the New Lender' ", and (c) "[a]ll future payments of interest, principal, or other charges payable by you under the Personal Loan shall be made payable to the Servicer and shall be sent to the Servicer…", and "demand[ing] that payments on the Bankruptcy Account be made to Luna". See dkt. #31, ¶¶ 27-29, 40-42, 55-57.

21. The Letter reads as follows:

---

[2] Creditor listed as "Banco Santander" in Claims Register.

Luna Chica, LLC                                                    [Santander Logo]

                                                                  February 1, 2022

[Plaintiff Name]
[Plaintiff Address]

Re: [Account Number]

To: [Plaintiff Name]

The above Personal Loan has been sold and conveyed to Luna Chia, LLC ("New Lender") by Santander Financial Services, Inc. All of the terms and conditions of the account remain in full force and effect and are now enforceable by the New Lender.

The New Lender has appointed Island Portfolio Services, LLC, as the services of the Personal Loan ("Servicer"). All future payments of interest, principal or other charges payable by you under the Personal Loan shall be made payable to the Servicer and shall be sent to the Servicer as follows:

> **Regular Mail & Overnight:**
> Island Portfolio Services, LLC
> PO Box 361110
> San Juan, PR 00936-1110
> (866) 417-6501 or (787) 303-8531
>
> **Make Check Payable to:**
> Island Portfolio Services, LLC

Please note that any ACH or auto-debits that you had previously setup with Santander Financial Services, Inc. are no longer in effect. To reestablish your ACH or auto-debit service please contact the Servicer.

Please contact the Servicer at the address and phone number given below if you have any questions.

> Island Portfolio Services, LLC
> PO Box 361110
> San Juan, PR 00936-1110
> (866) 417-6501 or (787) 303-8531

Very truly yours,

Santander Financial Services, Inc.                    Luna Chica, LLC

*Letter Issued to Plaintiff Soto*, dkt. #20, p. 5, dkt. #96-1, dkt. #119-1; *Letter Issued to Plaintiff Maldonado*, dkt. #20, p. 6; and *Letter Issued to Plaintiff Nieves*, dkt. #20, p. 7.[3]

22. On April 25, 2022, Debtors filed, and thereafter amended[4], the present *Class Action Complaint* (the "*Complaint*", dkt. #1, 31) against Santander Financial and First Bank Puerto Rico ("First Bank", collectively with Santander Financial, the "Defendants"), asserting one (1) cause of action, violation of the discharge injunction and civil contempt. Debtors allege that the Defendants violated the discharge intinction "by continuing [] collection efforts against Plaintiffs" (dkt. #31, ¶ 62) through the "s[ale] and/or transfer[] [of] the discharged debt to Luna Chica, LLC…" (id., ¶¶ 26, 39, 54, 66), and by issuing "a collection letter informing that Luna acquired the Bankruptcy Account and demand[ing] that payments … be made to Luna" (id., ¶¶ 27, 40, 55). Debtors also allege that First Bank "has a history of selling debts[] previously discharged in a bankruptcy proceeding, in violations of the discharge injunction" (id., ¶ 68), and request the court certify a class pursuant to Fed. R. Civ. P. 23 (id., ¶¶ 84-86). As a result of the forgoing allegations, Debtors seek actual damages of $5,000.00 per Plaintiff, punitive damages of $10,000.00 per Plaintiff, costs and attorneys' fees (id., ¶¶ 78-81).

23. On August 31, 2022, Debtors filed, and thereafter amended, a *Class Action Complaint* in the U.S. District Court for the District of Puerto Rico (the "District Court") against Island Portfolio Services LLC ("Island Portfolio") and Luna Chica, LLC ("Luna Chica"), asserting three (3) counts of violations to the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq*., and one (1) count of violation of the discharge injunction, each arising

---

[3] The extent to which a court may consider extrinsic evidence outside the four corners of the complaint depends upon whether that record, or the facts within it, are susceptible to judicial notice under Fed. R. Evid. 201. See Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citations omitted) ("Under certain 'narrow exceptions,' some extrinsic documents may be considered without converting a motion to dismiss into a motion for summary judgment. These exceptions include 'documents the authenticity of which are not disputed by the parties; ... official public records; ... documents central to plaintiffs' claim; [and] ... documents sufficiently referred to in the complaint.'"). The Letter although not filed with the complaint is sufficiently referred to therein and central to Plaintiffs' claim. As such, the court takes judicial notice thereof under to Fed. R. Evid. 201.

[4] The *Complaint* was amended on November 16, 2022, to include Santander Financial as a Defendant. See dkt. #31.

from the Letter allegedly issued by Island Portfolio in conjunction with Luna Chica, dated as of February 1, 2022. See Case No. 22-cv-01417 (SCC) (the "First District Court Action")[5].

24. On October 26, 2023, First Bank filed an *Answer to Complaint* (dkt. #28), asserting various affirmative defenses.

25. On November 28, 2022, Santander Financial, a dissolved entity[6], was allegedly served summons and a copy of the amended *Class Action Complaint*. See *Certificate of Service*, dkt. #38.

26. On January 30, 2023, Debtors filed another *Class Action Complaint* in the District Court against Luna Chica, asserting three (3) counts of violations to the FDCPA and one (1) count of violation of the discharge injunction, each arising from the issuance of the Letter. See Case No. 23-cv-01043 (RAM) (the "Second District Court Action")[7].

27. On May 26, 2023, the court entered an *Order to Show Cause* (dkt. #51), taking judicial notice of the First District Court Action and ordering the parties to show cause as to why the reference of the instate adversary proceeding should not be withdrawn. The court made the following observations:

> [B]oth the instant adversary proceeding and the District Court Action allege a violation of the discharge injunctions arising from the issuance of a communication on or about February 1, 2022; the communication referenced in the *Complaint* was not filed with this court; the communication dated February 1, 2022, filed with the District Court, includes language cited as allegedly included in the written communication referenced in the *Complaint*, and bears only the logo and trademark of Santander and Luna Chica; neither Island Portfolio nor Luna Chica were included as defendants to the instant adversary proceeding; and, neither Santander nor First Bank were included as defendants to the District Court Action. Compare *Complaint*, dkt. #31, ¶¶ 27-29, 40-42, 55-57, with *Letter*, Case No. 22-cv-01417, dkt. #1-1.
>
> …
>
> Adjudication of the District Court Defendants' liability for an alleged violation of this court's discharge order is currently pending with the District Court. To adjudicate the liability, if any, in the instant adversary proceeding for an alleged violation of the same discharge order referenced in the District Court Action is not an efficient use of judicial

---

[5] The court takes judicial notice of the First District Court Action under to Fed. R. Evid. 201.

[6] The court takes judicial notice of Defendant Santander Financial's dissolved status, published under Register No. 77704 on the *Registry of Corporations and Entities* of the Puerto Rico Department of State, under Fed. R. Evid. 201. See *Registry of Corporations and Entities*, https://rcp.estado.pr.gov/en/search.

[7] The court takes judicial notice of the Second District Court Action under to Fed. R. Evid. 201.

-7-

resources, and may encourage forum shopping. The parties are ordered to show cause within twenty-one (21) days as to why reference of the instant adversary proceeding should not be withdrawn pursuant to 28 U.S.C. § 157(d).

dkt. # 51, pp. 2-3.

28.     On June 2, 2023, Island Portfolio filed a *Motion to Intervene Under Fed. R. Civ. P. 24* (dkt. #57), a *Motion for Consolidation* of the First District Court Action with the instant proceeding (dkt. # 60), and a *Motion in Compliance with Order [to Show Cause]* (dkt. #61).

29.     On August 4, 2023, Santander Financial filed a *Motion in Compliance with Order to Show Cause* (dkt. #79).

30.     On August 11, 2023, Debtors filed an *Answer to Order to Show Cause* (dkt. #84), to which Island Portfolio replied on September 24, 2023 (dkt. #97).

31.     On September 11, 2023, Santander Financial filed the *Motion to Dismiss* under Fed. R. Civ. P. 12(b)(6) and (7) (dkt. #96).

32.     On October 3, 2023, the court entered an *Order and Certification to the United Stated District Court for the District of Puerto Rico* (the "*Certification*", dkt. #98), certifying the matter to the District Court and requesting that reference of the instant proceeding be withdrawn pursuant to 28 U.S.C. §157(d). See also *Order and Certification to the [District Court]*, dkt. #99. The adversary proceeding was held in abeyance on October 11, 2023, pending resolution of the *Certification*. See *Order*, dkt. #103.

33.      On January 12, 2024, Debtors filed a *Motion Requesting Entry of Order* (dkt. #105), informing the court that the District Court had declined to withdraw the reference and stayed both the First and Second District Court Action pending resolution of the instant proceeding. See Case No. 23-cv-01043 (RAM), dkt. #44 ("the Court declines to either consolidate or to withdraw the reference of the adversary proceedings. Because the discharge injunction violation issue remains pending before the Bankruptcy Court, the instant case shall be stayed until the adversary proceeding has concluded."); Case No. 22-cv-01417, dkt. #53 (SCC) ("The Court declines to consolidate and declines to withdraw the reference of the adversary proceedings. The

Court will await resolution of the discharge injunction violation matter pending before the Bankruptcy Court before proceeding to adjudicate…").

34. On January 16, 2024, the court vacated its *Order* holding matters in abeyance (dkt. #106), and denied Island Portfolio's *Motion to Intervene Under Fed. R. Civ. P. 24* (dkt. #57) and *Motion for Consolidation* of the First District Court Action with the instant proceeding (dkt. # 60). See *Order(s)*, dkt. #107, 108.

35. On March 11, 2024, Debtors filed an *Opposition to Motion to Dismiss* (the "*Opposition*", dkt. #119) accompanied by (i) the Letter (dkt. #119-1); (ii) the *Sworn Statement of Rafael A. Kortright Santaella*, VP Administrative Manager of First Bank's Collection Department (the "*Kortright-Santaella Decl.*,", dkt. #119-2) whereby First Bank states that the loans were classified as "loss, charged off, or bad loans since each of them they were 'discharged' well before the effective date of the merger, September 1st, 2020 … [and] were not transferred as assets from [Banco Santander Puerto Rico] to [First Bank Puerto Rico]" (dkt. #119-2, p. 3, ¶ 6); (iii) a copy of one of José R. Soto Villanueva's credit report as of May 9, 2022, for an account ending in 3684 whose "Activity Designator" appears as "TRANSFER_OR_SOLD", was last reported on August 31, 2020, and First Bank appears as the sole contact (dkt. #119-3); (iv) Santander Financial's Amendment to Articles of Incorporation, filed on December 20, 2022, with the Puerto Rico Department of State to amend the name, street and mailing address of its Resident Agent; (v) Proof of Claim No. 5 filed in the Bankruptcy Case of Plaintiff Soto, Bankr. Case No. 16-08627.

36. On April 11, 2024, Santander Financial filed a *Reply in Support of [] Motion to Dismiss* (the "*Reply*", dkt. #129).

<u>Legal Issues</u>

The issues pending before this court are (i) whether the issuance of the Letter and/or the post-petition sale and/or transfer of unsecured pre-petition discharged debt constitute a violation of the discharge injunction under 11 U.S.C. § 524(a)(2), and (ii) whether Island Portfolio and Luna Chica are indispensable required parties.

Position of the Parties

Debtors aver that the issuance of the Letter and the post-petition sale and/or transfer of unsecured pre-petition discharged debt constitute a collection activity in violation of the discharge injunction. See *Complaint*, dkt. #31.

Santander Financial argues that the *Complaint* fails to join indispensable parties, Island Portfolio and Luna Chica, and should be dismissed under Fed. R. Civ. P. 12(b)(7). Santander Financial also argues that the *Complaint* fails to allege with specificity that they engaged in any improper collection efforts against Debtors; includes ambiguous and generic allegations against both defendants without making any distinction between them, referring to both defendants interchangeably as "Defendant'"; does not plead that Santander Financial had any notice of Debtors' discharge, acted with the purpose of collecting discharged debts, made any collection efforts against Debtors or knew that Luna Chica would engage in collection actions against Debtors, or that the Letter was coercive or harassing. Santander Financial argues that the Letter is "a general informative letter about a change of creditor", and "lacks any wording that could objectively be interpreted as a collection effort [] or as an attempt by Santander Financial to coerce or harass any of the Plaintiffs" (dkt. #96, p. 2). As such, the *Complaint* fails to plead a plausible discharge violation claim under the Bankruptcy Code and should be dismissed under Fed. R. Civ. P. 12(b)(6).

In their *Opposition*, Debtors argue that:

the Complaint pleads that after receiving actual or constructive notice of Plaintiffs' Bankruptcy Discharge, Defendant Santander … continued with collection activity against the Plaintiffs for certain pre-petition debts. *See*, Dk. #1, ¶26-27, ¶39-40, ¶54-55. The Complaint pleads two fashions of post-discharge debt collection: (a) the selling of unsecured discharged debts to a third-party, without notice to the debt buyer that the debt had been discharged, and (b) sending a certain debt-collection letter dated February 1, 2022 to Plaintiffs (the "Debt Collection Letter"). *See*, **Exhibit A**. The Complaint also pleads that the debt collection activities resulted in coercion and harassment of the Plaintiffs; to wit, "caused the Plaintiffs to be afraid and fearful of the next possible act to be committed by the Defendant." *See*, Dk. #1, ¶75. Finally, the Complaint pleads that Defendants' actions were the direct and proximate cause of Plaintiffs' damages. Id., ¶76-77.

dkt. #119, p. 2 (footnote omitted). They further argue that the *Complaint* adequately and sufficiently pleads each element of a violation of the discharge order under Fed. R. Civ. P. 8(a) as follows: "The Complaint sufficiently pleads a plausible cause of action under Section 524 and 105 because it alleges that Defendants: (a) violated the Discharge Injunction; (b) that such violation was willful, and (c) that Plaintiff suffered damages from such violations" (id., p. 25). They argue that "Santander had … actual notice of the Discharge Order" because the discharge order in the bankruptcy case of Plaintiff Soto, Bankr. Case No. 16-08627, was mailed to "P.O. Box 362589, San Juan, PR 00936", which is the mailing address for "Santander Financial, Inc." per the Puerto Rico Department of State (id., pp. 3, 11). See also *Amendment to Articles of Incorporation for Santander Financial Services, Inc.*, dkt. #119-4.

Debtors argue that the selling of discharged accounts to a third-party collector is a deliberate act to collect on a discharged debt, and thus a willful violation of the discharge order, citing In re Laboy, 2010 WL 427780, 2010 Bankr. LEXIS 345 (Bankr. D.P.R. 2010). And, "a debtor need not prove that the creditor acted in bad faith or even that the creditor created all of the circumstances in which the coercion occurred, only that the creditor's actions had a coercive effect upon the debtor" (dkt. #119, pp. 3, 14, 16). And, in pleading that Defendants continued will collection efforts by selling and/or transferring the discharged debt to Luna, they need not plead further.

Debtors also argue that the *Complaint* does not lump the Defendants together and properly pleads and imputes acts or omissions on Santander Financial and FirstBank "in the alternative", in compliance with Fed. R. Civ. P. 20(a)(2)(A) (dkt. #119, p. 4). See also *Complaint*, dkt. # 31, ¶¶ 11, 15, 17, and fn. 3. In support of its argument, Debtors state "there is good reason to believe that Defendant Santander is a proper Defendant in this case; similarly, there is also good reason to believe that Defendant FirstBank is equally a proper Defendant in this Case. Finally, Plaintiff has repeatedly requested from FirstBank a copy of the FirstBank/Santander merger – to confirm FirstBank's allegations – and FirstBank has refused to tender the requested evidence" (dkt. #119, p. 20, fn. 10).

With respect to Santander Financial's argument that dismissal is appropriate for failure to join indispensable parties, Debtors argue that neither Luna Chica nor Island Portfolio are indispensable parties, and both the District Court and this court "have already rejected similar invitations to join and/or consolidate parties or cases to this proceeding" (dkt. #119, p. 4).

In its *Reply* (dkt. #129), Santander Financial argues that Fed. R. Civ. P. 20(a)(2) allows joinder of multiple defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences[.]" Fed. R. Civ. P. 20(a)(2)(A). Thus, Fed. R. Civ. P. 20 applies when "the substance of plaintiff's claim indicates that plaintiff is entitled to relief from someone, but the plaintiff does not know which of two or more defendants is liable under the circumstances set forth in the complaint." Deutsche Bank Tr. Co. Americas v. Doral Fin. Corp., 841 F. Supp. 2d 593, 600 (D.P.R. 2012) (citation omitted). Santander Financial argues that "[t]here is no pleading establishing or inferring that the allegations against Defendants 'arise from the same transaction or occurrence' as required by Rule 20(a)(2), nor any specific allegation made against Santander specifically" (dkt. #129, p. 3). "The only specific allegation against Santander is that Santander could have been the owner of any of the discharge debts and liable under the principle of successor liability if FirstBank did not acquire these debts from Banco Santander through a merger. See ECF No. 31 at ¶ 11." (id.). "[T]he Complaint has no specific allegations against Santander that could lead to a plausible discharge injunction violation" (id.). "Although Santander recognizes that some allegations at the pleading stage can be made 'in the alternative' the complete absence of any concrete allegations against Santander simply prevents Plaintiffs from claiming that Santander engaged in actions that resulted in a discharge injunction violation. There must be specific allegations of wrongdoing, and there are simply none here. Santander thus requests that the Complaint be dismissed against it." (id., p. 4). As to Debtors' allegation that "Defendants maintain a policy or practice whereby they attempt to collect discharged debts" (dkt. #119 at 9-10), Santander Financial argues that Paragraph 69 of the *Complaint* alleges "*FirstBank's* pattern and practice of continuing to collect discharged debts by selling its discharged debts to a third

party is part of its business model to maximize profits at the expense of Debtor's right to a fresh start", "allegation … clearly directed at FirstBank and not Santander Financial" (dkt. #31 at ¶ 69) (italics provided).

Santander Financial also argues that the allegation that *Santander* had actual or constructive notice of the bankruptcy case and/or the discharge order are conclusory and should be disregarded. They also argue that "most of the … allegations … are … against the bundled 'Defendants' " and "*Banco Santander*, *not Santander Financial* … two distinct entities. Banco Santander's knowledge cannot extend to Santander Financial without additional allegations" (dkt. #129, pp. 5-6). "Plaintiffs cannot rest 'on the theory of success liability['] to infer Santander Financial's awareness of Plaintiffs' discharge orders (id., p. 6). And, "[t]he Amended Complaint only alleges that FirstBank merged with Banco Santander and not with Santander Financial. ECF No. 31 ¶¶ 10-11. No 'successor relationship' is alleged … between Banco Santander and Santander Financial." (id., p. 6). And, Santander Financial avers that the Letter is not "tantamount to a threat" (id., p. 7).

Applicable Law and Analysis

(A)     Motion to Dismiss Standard under Fed. R. Civ. P. 12(b)(7)

Fed. R. Civ. P. 19, made applicable to adversary proceedings through Fed. R. Bankr. P. 7019, addresses situations where a suit is proceeding without a party whose interests are central to the suit. In deciding a motion under Fed. R. Civ. P. 12(b)(7) for failure to join a party under Fed. R. Civ. P. 19, made applicable to adversary proceedings through Fed. R. Bankr. P. 7012, courts employ a two-step approach. See United States v. San Juan Bay Marina, 239 F.3d 400, 405 (1st Cir. 2001); Puerto Rico Medical Emergency Group, Inc. v. Iglesia Episcopal Puertorriqueña, Inc., 257 F.Supp.3d 225, 230 (D.P.R. 2017). First, courts analyze "whether the person fits the definition of those who should 'be joined if feasible' under [Fed. R. Civ. P.] 19(a)", that is, whether the absent person is a "required" party. Cruz–Gascot v. HIMA–San Pablo Hosp. Bayamon, 728 F.Supp.2d 14, 26 (D.P.R. 2010). Second, whether the joinder is feasible. See id., at 27.

-13-

The U.S. Court of Appeals for our First Circuit (the "First Circuit') has explained that:

> [Fed. R. Civ. P.] 19 addresses situations where a lawsuit is proceeding without a party whose interests are central to the suit. [Picciotto v. Continental Cas. Co., 512 F.3d 9, 14 (1st Cir. 2008)]. The Rule provides for joinder of required parties when feasible, Fed. R. Civ. P. 19(a), and for dismissal of suits when joinder of a required party is not feasible and that party is indispensable, Fed. R. Civ. P. 19(b). The Rule calls for courts to make pragmatic, practical judgments that are heavily influenced by the facts of each case. See Picciotto, 512 F.3d at 14–15; Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 635 (1st Cir. 1989); see also 7 C. Wright & A. Miller, Federal Practice & Procedure § 1604 ("By its very nature Rule 19(a) calls for determinations that are heavily influenced by the facts and circumstances of individual cases....").

Bacardi Intern. Ltd. v. V. Suarez & Co., Inc., 719 F.3d 1, 9 (1st Cir. 2013). See also Confederación Hípica de Puerto Rico v. Confederación de Jinetes Puertorriqueños, Inc., 2020 WL 13249663, at *3–4 (D.P.R. 2020).

The First Circuit has also opined that courts "should keep in mind the policies that underlie [Fed. R. Civ. P.] 19, 'including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in avoiding the possible prejudicial effect of deciding the case without them.' " Picciotto, 512 F.3d at 15–16, citing Acton Co. v. Bachman Foods, Inc., 668 F.2d 76, 78 (1st Cir. 1982). Ultimately, however, "[j]oinder is a matter left to the sound discretion of the Court." Hershey Foods Corp. v. Padilla, 168 F.R.D. 7, 10 (D.P.R. 1996). See also Paredes Figueroa v. International Air Services of Puerto Rico, Inc., 662 F.Supp. 1202, 1204 (D.P.R. 1987).

"[T]he moving party carries the burden of showing why an absent party should be joined." Raytheon Co. v. Cont'l Cas. Co., 123 F.Supp.2d 22, 32 (D.Mass. 2000). To meet this burden, "the moving party may present, and the court may consider, evidence outside of the pleadings." Id. (citations omitted).

Santander Financial argues that Island Portfolio and Luna Chica are indispensable parties. In analyzing Fed. R. Civ. P. 19(a), this court must first determine whether Island Portfolio and Luna Chica are "required" parties. As this court has stated before, both the instant adversary proceeding and the First and Second District Court Action allege a willful violation of the

discharge injunction arising from the issuance of the Letter. The First and Second District Court Action also allege FDCPA violation claims arising from the issuance of the Letter. The Letter filed with the District Court (now filed in the instant case and made part of the record by Santander Financial) makes reference to Santander Financial, Island Portfolio, and Luna China; the Letter bears only the logo and trademark of Santander Financial and Luna Chica; neither Island Portfolio nor Luna Chica were included as defendants to the instant adversary proceeding; neither Santander Financial nor First Bank were included as defendants to the First District Court Action; and adjudication of the District Court Defendants' liability for an alleged violation of this court's discharge order was pending with the District Court (now stayed).

These findings led this court to conclude that to adjudicate the liability, if any, in the instant adversary proceeding for an alleged violation of the same discharge order referenced in the First and Second District Court Action is not an efficient use of judicial resources, and may encourage forum shopping. It also led this court to request reference be withdrawn pursuant to 28 U.S.C. § 157(d), request which the District Court declined in both the First and Second District Court Action. See Case No. 23-cv-01043 (RAM), dkt. #44 ("the Court declines to either consolidate or to withdraw the reference of the adversary proceedings. Because the discharge injunction violation issue remains pending before the Bankruptcy Court, the instant case shall be stayed until the adversary proceeding has concluded."); Case No. 22-cv-01417, dkt. #53 (SCC) ("The Court declines to consolidate and declines to withdraw the reference of the adversary proceedings. The Court will await resolution of the discharge injunction violation matter pending before the Bankruptcy Court before proceeding to adjudicate…").

In analyzing Fed. R. Civ. P. 19(a)(1)(A), the court finds that complete relief can be afforded *among existing parties* (Debtors, First Bank and Santander Financial) even where a dispute with the absent parties (Island Portfolio and Luna Chica) may be left unresolved. See *e.g.*, Bacardi Intern, 719 F.3d at 10 (so holding). Turning to Fed. R. Civ. P. 19(a)(1)(B)(ii), this court finds that resolution of the present action in Island Portfolio and Luna Chica's absence will not subject First Bank or Santander Financial to a substantial risk of double, multiple, or otherwise

inconsistent obligations. See *e.g.*, Delgado v. Plaza Las Americas, Inc., 139 F.3d 1, 3 (1st Cir. 1998) (" '[i]nconsistent obligations' are not ... the same as inconsistent adjudications or results," because "[i]nconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident."); Bacardi Intern, 719 F.3d at 12-13. Even if the First and Second District Court Action produce different results from the instant case, First Bank and Santander Financial would not be subject to different obligations because of Island Portfolio and Luna Chica's absence from this case.

This court does find, however, that resolution of the present action in Island Portfolio and Luna Chica's absence could, as a practical matter, impair or impede their ability to protect their interests under Fed. R. Civ. P. 19(a)(1)(B)(i). First, while the outcome of this proceeding would not be binding on Island Portfolio or Luna Chica as *res judicata*, an adverse ruling could nonetheless impair Island Portfolio and Luna Chica's probability of success and ability to reach a favorable settlement in the First and Second District Court Action. See *e.g.*, Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. at 110 (1968); Acton, 668 F.2d at 78-81 (noting that settlement position is a valid consideration which weights in favor of dismissal under Fed. R. Civ. P. 19); Gonzalez v. Cruz, 926 F.2d 1 (1st Cir. 1991) (holding that although a ruling against the absent party would not be binding in the state court, it "could, as a practical matter, impair [the absent party's] probability of success in a future proceeding and reduce its ability to reach a favorable settlement").

This court finds that Island Portfolio and Luna Chica are indispensable required parties to this action who fit the definition of those who should "be joined if feasible" under Fed. R. Civ. P. 19. See MMM Healthcare, Inc. v. Santiago (In re Santiago), 563 B.R. 457 (Bankr. D.P.R. 2017) (finding that the issuer of a letter allegedly issued in violation of stay is a required party in a violation of stay cause of action under Fed. R. Civ. P. 19). Having determined the absentee parties as indispensable required parties, this court further conclude that their joinder was feasible, that is, would not deprive the court of subject-matter jurisdiction. This court clarifies that notwithstanding its denial of non-party Island Portfolio's request to intervene under Fed. R. Civ.

P. 24 (dkt. #107) (burden on moving non-party intervenor), such denial does not negate or preclude a request for dismissal under Fed. R. Civ. P. 12(b)(7) (burden on moving party defendant), or otherwise excuse a plaintiffs' obligation to join indispensable required parties under Fed. R. Civ. P. 19. See e.g., C. Wright & A. Miller, 18A Federal Practice and Procedure § 4438 (3rd ed., 2024). Thus, this court finds that dismissal of the instant case is proper under Fed. R. Civ. P. 12(b)(7) for failure to join indispensable required parties, Island Portfolio and Luna Chica.

(B)     Motion to Dismiss Standard under Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) is made applicable to adversary proceedings through Fed. R. Bankr. P. 7012. In deciding a motion under Fed. R. Civ. P. 12(b)(6), the court must determine whether a complaint states a plausible claim. "The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to assess the legal feasibility of a complaint, not to weigh the evidence which the plaintiff offers or intends to offer." In re Instituto Medico del Norte, Inc., 2021 WL 4944085, at * 2, 2021 Bankr. LEXIS 2924, at *7 (Bankr. D.P.R. 2021); Lugo Alejandro v. Betancourt (In re Betancourt), 2021 WL 438858, 2021 Bankr. LEXIS 298 (Bankr. D.P.R. 2021); Vélez Arcay v. Banco Santander de P.R. (In re Vélez Arcay), 499 B.R. 225, 230 (Bankr. D.P.R. 2013), citing Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2nd Cir. 1984); Citibank, N.A. v. K-H Corp., 745 F. Supp. 899, 902 (S.D.N.Y. 1990).

Fed. R. Civ. P. 8(a)(2), applicable to adversary proceedings through Fed. R. Bankr. P. 7008, mandates complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Although detailed factual allegations are not required, the Rule does call for sufficient factual matter". Surita-Acosta v. Reparto Saman Inc. (In re Surita Acosta), 464 B.R. 86, 90 (Bankr. D.P.R. 2012). Therefore, to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, accepted as true, "state[s] a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id.,

at 556. The Twombly standard was further developed in Ashcroft v. Iqbal, 556 U.S. 622 (2009), advising lower courts that "determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft, 556 U.S. at 679. "In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id., at 679. In sum, allegations in a complaint cannot be speculative and must cross "the line between the conclusory and the factual". Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011). "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011).

In Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012), the First Circuit established a two-step standard for motions to dismiss under Fed. R. Civ. P. 12(b)(6). Step one: isolate legal conclusions. Step two: take the complaint's well-pleaded (non-conclusory) allegations as true, drawing all reasonable inferences in favor of the plaintiff and determine if they plausibly narrate a claim for relief. See Pérez v. Rivera (In re Pérez), 2013 WL 1405747 at *3, 2013 Bankr. LEXIS 1561 (Bankr. D.P.R. 2013); Zavatsky v. O'Brien, 902 F. Supp. 2d 135, 140 (D. Mass. 2012).

"Simply because the court is hesitant to dismiss a claim in the early sta[g]es of litigation, however, does not mean that there are not circumstances where the court can and should act. Fed. R. Civ. P. 12(b)(6) weeds out those allegations that, even with further factual development, will never grow into sustainable claims under the law." Arruda v. Sears, Roebuck & Co., 273 B.R. 332, 340 (D.R.I. 2002). As the First Circuit has stated, "in the menagerie of the Civil Rules, the tiger patrolling the courthouse gates is rather tame, but 'not entirely ... toothless.' " Correa v.

Arrillaga, 903 F.2d 49, 52 (1st Cir. 1990), quoting Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).

Consideration of a motion to dismiss requires the court to assume the truth of all well-plead facts and give the benefit of all reasonable inferences therefrom. A complaint that states a claim plausible on its face survives a motion to dismiss. See Banco Santander P.R. v. P.R. Hosp. Supply, Inc. (In re P.R. Hosp. Supply, Inc.), 617 B.R. 181, 191 (Bankr. D.P.R. 2020).

(C)     Violation of the Discharge Injunction Under 11 U.S.C. § 524(a)(2)

This court addressed the applicable law on violations of the discharge injunction under Section 524(a)(2) of the Bankruptcy Code in In re Laboy, 2010 WL 427780, 2010 Bankr. LEXIS 345 (Bankr. D.P.R. 2010), and In re McConnie Navarro, 563 B.R. 127 (Bankr. D.P.R. 2017). In Laboy, *supra*, this court stated the following:

> The effect of a bankruptcy discharge is that it "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). The discharge injunction is the mechanism which allows the debtor to commence debt-free his or her fresh start. See In re Latanowich, 207 B.R. 326, 334 (Bankr. D. Mass. 1997) ("The purpose of the permanent injunction set forth at § 524(a)(2) and reiterated in the discharge order is to effectuate one of the primary purposes of the Bankruptcy Code: to afford the debtor a financial fresh start."); Green v. Welsh, 956 F.2d 30, 33 (2d Cir. 19[]92); Baker v. Somerville Mun. Fed. Credit Union (In re Baker), 2006 Bankr. Lexis 3183, 2006 WL 3370864 (Bankr. D. Mass. 2006). The discharge injunction is like a permanent extension of the automatic stay under 11 U.S.C. § 362(a) of the Bankruptcy Code and thus, includes all types of collection activity such as; letters, phone calls, threats of criminal proceedings or other adverse actions brought about with the purpose of debt repayment. See Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 524.02[2] (15th ed. 2009); Ung v. Boni (In re Boni), 240 B.R. 381, 384 n. 5 (B.A.P. 9th Cir. 1999). Moreover, "[c]reditors are obligated to maintain procedures to ensure that they do not violate section 524, and may be held liable for damages and attorney's fees if they do not." Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 524.02[b] (15th ed. 2009); See In re Roush, 88 B.R. 163, 165 (Bankr. S.D.Ohio 1988); Faust v. Texaco (In re Faust), 270 B.R. 310, 317 (Bankr. M.D.Ga. 1998); In re Nassoko, 405 B.R. 515, 521 (Bankr. S.D.N.Y. 2009). "Although, § 524(a) which establishes the discharge injunction, does not include a specific provision setting out available remedies for violations of the discharge injunction, bankruptcy courts invoke § 105(a), which grants bankruptcy courts broad equitable powers, to enforce the discharge injunction, using the mechanism of civil contempt action." Parker v. Boston Univ. (In re Parker), 334 B.R. 529, 537–538 (Bankr. D.Mass. 2005); See U.S. v. Rivera Torres

(In re Rivera Torres), 309 B.R. 643,647 (B.A.P. 1st Cir. 2004); In re Pratt, 324 B.R. at 5; Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 445 (1st Cir. 2000), *cert. denied*, 532 U.S. 1048, 121 S.Ct. 2016, 149 L.Ed.2d 1018 (2001).

2010 WL 427780, at *5, 2010 Bankr. LEXIS 345, at *15-16.

With respect to the standard to establish a willful violation of the discharge injunction under 11 U.S.C. § 524(a)(2), this court held that the standard "is met if the defendant had knowledge of the discharge injunction and the same intended the actions which constituted the violation." 2010 WL 427780, at *5, 2010 Bankr. LEXIS 345, at *15-16, citing Fleet Mortg. Group, Inc. v. Kaneb, 196 F.3d 265, 268 (1st Cir. 1999), Pratt v. GMAC (In re Pratt), 462 F.3d 14, 21 (1st Cir. 2006), and Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 524.02[2][c] (15th ed., 2009). This court further held that the defendant "must have actual or constructive knowledge of the discharged debt for the knowledge requirement to be satisfied", and "[c]ivil contempt must be proven by clear and convincing evidence." Id., citing Torres v. Chase Bank U.S.A., N.A. (In re Torres), 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007), and Ellis v. Dunn (In re Dunn), 324 B.R. 175, 179 (D.Mass. 2005).

On that vein, this court stated the following in McConnie, *supra*:

A creditor violates the discharge injunction when it (i) has notice of the debtor's discharge; (ii) intends the actions which constitute the violation; and (iii) acts in a way that improperly coerces or harasses the debtor. In re Lumb, 401 B.R. at 6. In determining discharge injunction violations, the crucial issue is whether the creditor acted in such a way to "coerce" or "harass" the debtor improperly. See Pratt v. GMAC (In re Pratt), 462 F.3d 14, 19 (1st Cir. 2006) (citing In re Diamond, 346 F.3d 224, 227 (1st Cir. 2003)). "Coercion is assessed under an objective standard, and the issue of whether a creditor acted in an objectively coercive manner is determined on the specific facts of each case." Bates v. CitiMortgage, Inc. (In re Bates), 517 B.R. 395, 398 (Bankr. D.N.H. 2014) (citing In re Pratt, 462 F.3d at 19)); See also: Quiles Aviles v. City of Philadephia Water Revenue Bureau, 532 B.R. 428, 436 (Bankr. D.P.R. 2015). "Thus, a debtor need not prove that a creditor acted in bad faith or even that the creditor created all of the circumstances in which the coercion occurred, only that the creditor's actions had a coercive effect upon the debtor (citing In re Schlichtmann, 375 B.R. 41, 95 (Bankr. D. Mass. 2007); Curtis v. Salem Five Mortgage Co., LLC (In re Curtis), 359 B.R. 356 (1st Cir. BAP 2007). However, the "debtor's subjective feeling of coercion of harassment is not enough." Bates v. CitiMortgage, Inc., 2016 U.S. App. Lexis 22215, *7, 2016 WL 7229754 (1st Cir. 2016).

-20-

The determination is fact specific and made on a case-by-case basis, as the line between forceful negotiation and improper coercion is not always clear. In re Pratt, 462 F.3d at 19; In re Schlichtmann, 375 B.R. at 95[;] In re Lumb, 401 B.R. at 6–7. An action is considered coercive when it is "tantamount to a threat." See Jamo v. Katahdin Fed. Credit Union (In re Jamo), 283 F.3d 392, 402 (1st Cir. 2002), or places the debtor "between a rock and a hard place." See Diamond v. Premier Capital, Inc. (In re Diamond), 346 F.3d 224, 227–228 (1st Cir. 2003). In determining whether an action is coercive, courts consider the "immediateness" of the threatened action and the context in which this action took place. In re Diamond, 346 F.3d at 227; See also: In re Bates v. Citimortgage, Inc., 2016 U.S. App. Lexis 22215, *8, 2016 WL 7229754 ("We have no 'specific test' to determine whether a creditor's conduct meets this objective standard, but we consider the facts and circumstances of each case, including factors such as the 'immediateness of any threatened action and the context in which a statement is made' "). ".... A creditor violates the discharge injunction only if it acts to collect or enforce a prepetition debt; bad acts that do not have a coercive effect on the debtor do not violate the discharge." In re Lumb, 401 B.R. at 7 citing In re Schlichtmann, 375 B.R. at 97.

563 B.R. at 142-143.

In applying the three-prong test to the instant adversary proceeding, the parties do not agree that Santander Financial had notice of the *Order of Discharge*. Santander Financial argues that Debtors' allegation that *Santander* had actual or constructive notice of the bankruptcy case and/or the discharge order are conclusory and should be disregarded. They also argue that "most of the … allegations … are … against the bundled 'Defendants' " and "*Banco Santander*, *not Santander Financial* … two distinct entities. Banco Santander's knowledge cannot extend to Santander Financial without additional allegations" (dkt. #129, pp. 5-6).

What is clear from the record is that notice of the bankruptcy filing was sent to: (i) BC Santander at "PO BOX 362589, San Juan, PR 00936-2589" in the Bankruptcy Case of Plaintiff Soto (*Certificate of Service*, Bankr. Case No. 16-08627, dkt. #7); (ii) Banco Santander and Banco Santander de PR at "PO BOX 362589, San Juan, PR 00936-2589" in the Bankruptcy Case of Plaintiff Nieves (*Certificate of Service*, Bank. Case No. 17-02550, dkt. #6); and (iii) Banco Santander and Banco Santander Visa at "268 PONC E[sic] DE LEON, San Juan, PR 00918" and "GPO BOX 2589, San Juan, PR 00936", respectively, in the Bankruptcy Case of Plaintiff Maldonado (*Certificate of Service*, Bankr. Case No. 19-04425, dkt. #8). It is also clear from the record that notice of the *Order of Discharge* was sent to: (i) BC Santander at "PO BOX 362589,

San Juan, PR 00936-2589" in the Bankruptcy Case of Plaintiff Soto (*Certificate of Service*, Bankr. Case No. 16-08627, dkt. #94); (ii) Banco Santander and Banco Santander de PR at "PO BOX 362589, San Juan, PR 00936-2589" in the Bankruptcy Case of Plaintiff Nieves (*Certificate of Service*, Bankr. Case No. 17-02550, dkt. #24); and (iii) Banco Santander and Banco Santander Visa at "268 PONC E[sic] DE LEON, San Juan, PR 00918" and "PO BOX 2589, San Juan, PR 00936", respectively, in the Bankruptcy Case of Plaintiff Maldonado (*Certificate of Service*, Bankr. Case No. 19-04425, dkt. #46). Lastly, the record reflects that it was Banco Santander Puerto Rico (listed as "BC Santander" in the Claims Register) who filed Proof of Claim No. 5 in the Bankruptcy Case of Plaintiff Soto; and Santander (listed as "Banco Santander" in the Claims Register) who filed Proofs of Claim Nos. 1 and 2 in the Bankruptcy Case of Plaintiff Maldonado. No entity bearing the name "Santander" filed a proof of claim in the Bankruptcy Case of Plaintiff Nieves.

While the exact nature of the relationship between Santander Financial, Banco Santander, Santander, BC Santander, Banco Santander Puerto Rico, Banco Santander de PR, and Banco Santander Visa is not clear from the record, nominative confusion notwithstanding, the companies appear to be separate entities. Thus, the first prong of a *prima facie* discharge injunction violation claim is not satisfied.

The parties also disagree as to the second and third prongs of the test, to wit, whether Defendants intended the actions that violated the discharge injunction, and whether such act improperly coerced or harassed the Debtors. Where the alleged discharge injunction violation claim arises from the issuance of an alleged collection notice or communication, this court has stated the following:

> The question of whether the Collection Notice violated the discharge injunction is a "particularly fact-intensive inquiry" for which "no bright line rule exists. Case law, however, is instructive in determining whether a creditor's communications violate the discharge injunction. Because the discharge injunction only prohibits those communications 'designed to collect, recover or offset any [discharged] debt as a personal liability of the debtor,' correspondence that is 'informational in nature' does not violate the automatic stay or discharge injunction." <u>Kirby v. 21st Mortg. Corp. (In re Kirby)</u>, 599 B.R. 427, 440 (B.A.P. 1st Cir. 2019) (citations omitted). "In this circuit,

courts assess whether conduct is improperly coercive or harassing under an objective standard—the debtor's subjective feeling of coercion or harassment is not enough." Id., at 440 (quotations and citations omitted). "While there is no specific test to determine whether a creditor's conduct meets this objective standard, the circuit considers the facts and circumstances of each case, including factors such as the immediateness of any threatened action and the context in which a statement is made." Id. "An action is coercive when it is tantamount to a threat, or places the debtor between a rock and a hard place in which he would lose either way." Id., citing Diamond v. Premier Capital, Inc. (In re Diamond), 346 F.3d 224, 227 (1st Cir. 2003).

In re Padilla, 2023 WL 2504706, at *12, 2023 Bankr. LEXIS 652, at *28-30 (Bankr. D.P.R. 2023). The communication at issue in Padilla contained the following language: "you owe the treasury $20,861.98", "[t]o prevent Interests and surcharges from accumulating any further, you must pay the debt immediately", "if we do not receive … payment, we will proceed to charge the debt" by "1) requiring your financial institution to withhold the payment of the debt of your bank accounts; 2) seizing and auctioning your real and personal property in an expedited manner; 3) Ordering payments to be withheld in case you are an asset and service provider for the Government of Puerto Rico: 4) Notifying the Credit Bureau." 2023 WL 2504706, at *14, 2023 Bankr. LEXIS 652, at *30. Consequently, this court concluded that the Collection Notice in Padilla "constitutes a demand for payment of a pre-petition discharged debt, and that the 'immediateness' of the threatened action is 'tantamount to a threat' and 'coercive', and thus a violation of the discharge order." Id.

The Letter in the instant case includes the following pertinent language: the "Personal Loan has been sold and conveyed"; "[a]ll of the terms and conditions of the account remain in full force and effect and are now enforceable by the New Lender"; "[a]ll future payments of interest, principal or other charges payable by you under the Personal Loan shall be made payable to the Servicer and shall be sent to the Servicer'; "any ACH or auto-debits that you had previously setup with Santander Financial Services, Inc. are no longer in effect"; "[t]o reestablish your ACH or auto-debit service please contact the Servicer"; and "[p]lease contact the Servicer at the address and phone number given below if you have any questions." *Letter re. Plaintiff Soto*, dkt. #20, p. 5, dkt. #96-1, dkt. #119-1; *Letter re. Plaintiff Maldonado*, dkt. #20, p. 6; and *Letter re. Plaintiff*

-23-

*Nieves*, dkt. #20, p. 7. The Letter does not indicate any amount as past due; demand immediate payment or threaten legal consequences for non-action; acknowledge the bankruptcy case or the discharge order; or contain any language advising the recipient that such communication is informational in nature and not an attempt to collect on a discharged debt. See *e.g.*, In re Cantrell, 605 B.R. 841, 856 (Bankr. W.D. Mich. 2019) (noting that "the presence, prominence, and clarity of disclaimer language in post-discharge communications with debtors is often a significant factor in a court's determination of whether the communications violate the discharge injunction").

Debtors cite authority from this district holding that the discharge injunction applies to the sale or transfer of a discharged debt. See *e.g.*, In re Laboy, 2010 WL 427780, 2010 Bankr. LEXIS 345 (Bankr. D.P.R. 2010). In Laboy, the debtor-plaintiffs alleged that First Bank sold its unsecured pre-petition debt to such third parties after such debt was discharged in bankruptcy in violation of the discharge injunction. They also alleged that they received collection letters from the third-party purchasers following the sale. First Bank argued that the sale was not a violation of the discharge injunction. This court found and concluded as follows:

> [T]he purpose of the discharge injunction … is simply to prevent a debtor from being pursued for the payment of his or her discharged debts, thus affording the debtor a financial fresh-start. **If a creditor were permitted to sell its discharged debts to a third party it would be tantamount to indirectly circumventing the discharge injunction pursuant to 11 U.S.C. § 524(a)**. **Moreover, the bankruptcy court in In re Lafferty held that the selling of accounts (discharged debts) to a third party collector is a deliberate act to collect on a discharged debt, and thus constituted a willful violation of the discharge injunction**. In re Lafferty, 229 B.R. 707, 714 (Bankr. N.D.Ohio 1998) citing Walker v. M & M Dodge (In re Walker), 180 B.R. 834, 844 (Bankr. W.D.La. 1995).

> … it is contested whether Defendant FirstBank had actual or constructive knowledge of Plaintiffs' discharged debt … Notwithstanding, FirstBank would still be left to explain why it sold a prepetition debt to a third party after it had knowledge of the bankruptcy filing and thus, the automatic stay pursuant to 11 U.S.C. § 362(a) would still be in effect, absent notice that such case had been dismissed or that discharge had been denied (from the records of the lead case, FirstBank did not obtain relief from the automatic stay). See Alan N. Resnick & Henry J. Sommer, 9 Collier on Bankruptcy ¶ 4004.08 (15th ed. 2009). "Thus the failure to receive notice of the discharge order would not necessarily excuse the creditor's actions if they would have been wrongful even in the absence of a discharge order." Alan N. Resnick & Henry J. Sommer, 9

-24-

Collier on Bankruptcy ¶ 4004.08 (15th ed.2009). FirstBank had knowledge of the following: (i) Debtors filed a bankruptcy petition under Chapter 7 on February 17, 1993; (ii) the particular debt … was listed in Debtors' schedules as an unsecured claim; and (iii) FirstBank filed a proof of claim on March 17, 1993 for this particular debt. **This court finds that FirstBank had actual notice of the bankruptcy petition and, thus knew that the automatic stay under 11 U.S.C. § 362(a) was applicable and if a discharge was entered subsequently its unsecured claims were dischargeable debts, thus it had knowledge of sufficient facts "to cause a reasonably prudent person to make additional inquiry" to determine whether the discharge had been filed or if the case had been dismissed.** See In re Stucka, 77 B.R. 777, 783 (Bankr. C.D.Cal. 1987)[,] citing In re Bragg, 56 Bankr.46, 49 (Bankr. M.D.Ala. 1985) ("A willful violation of the automatic stay provision is also committed when a party acts in violation of the stay with knowledge or notice of sufficient facts to cause a reasonably prudent person to make additional inquiry to determine whether a bankruptcy petition has been filed.") See also In re Lafferty, 229 B.R. 707, 713 citing In re Roush, 88 B.R. 163, 164; In re Summers, 213 B.R. 825, 828 (Bankr. N.D.Ohio 1996). **This court concludes that Defendant had actual knowledge of the automatic stay pursuant to 11 U.S.C. § 362(a) and that it had constructive knowledge of the discharge injunction and that it intended the actions which constituted the discharge injunction violation.**

2010 WL 427780, at *6-8, 2010 Bankr. LEXIS 345, at *20-25 (boldface added).

On that same vein, in the case of In re Rojas, 2009 WL 3055430, 2009 Bankr. LEXIS 4312 (Bankr. D.P.R. 2009), an unsecured non-priority debt held by Money Express was discharged, notice of which was sent to Money Express. Money Express subsequently assigned or conveyed such debt to Advance Collection Services, Inc. ("Advance"), but specifically informed Advance that all actions or proceedings to enforce any discharged debt or to levy plaintiff's property after the entry of the discharge order were prohibited by law. Thereafter, Advance issued a written demand for payment to collect on the discharged debt. This court found that because Money Express had specifically informed Advanced that the debt was discharged and that any action to collect it was illegal, *it could not conclude* that the complaint alleged a plausible entitlement to relief, finding instead that it failed to set forth factual allegations respecting each material element necessary to sustain recovery for violation of the discharge injunction, namely that Money Express *intended* the actions which constituted the violation and

-25-

that it acted in a way that improperly coerced or harassed the debtor-plaintiff. Accordingly, the court dismissed the complaint for failure to state a claim upon which relief may be granted.

Several other district courts have likewise considered whether the sale of a discharged debt is a violation of the discharge injunction. By way of example, in Lafferty, an unsecured non-priority debt held by a bank was discharged, notice of which was sent to such bank. The bank subsequently sold its debt portfolio, including the discharged debt, to a third party, which then filed a complaint in state court against the discharged debtor to collect on the discharged debt. The U.S. Bankruptcy Court for the Northern District of Ohio held an evidentiary hearing where there was testimony focusing on the procedures employed by the bank to classify debts as discharged and whether the bank had knowledge of the vendee's intentions. In its ruling, the court stated that the bank had a responsibility to "to effectively note that discharge in its records", and found that "[t]he selling of accounts is a deliberate act to collect on a discharged debt", and thus constituted a willful violation of the discharge injunction. 29 B.R. at 714 (citation omitted). The court also found that the bank knew the third party would seek to collect the debt and that procedures adopted by the bank to identify debts that had been discharged *after the fact* did not prevent it from being held liable for historical deficiencies.

In Finnie v. First Union Nat'l Bank, 275 B.R. 743 (E.D.Va. 2002), the U.S. District Court for the Eastern District of Virginia held that: "there is no prohibition on the creditor *selling* the [unsecured] discharged debt … to a third party." 275 B.R. at 746 (italics original). The court also found that while "[a]n effort by the *purchaser* of the discharged debt to collect on that debt may be a violation of the injunction", "[a]bsent an agency relationship between the seller of a discharged debt and the purchaser of that debt … the seller of a discharged debt is not liable for the purchaser's subsequent attempt to collect on that debt." Id. (italics original).

In McKay, the U.S. Bankruptcy Court for the Eastern District of Michigan found and concluded that the mere sale of a discharged debt to a third party did not constitute a violation of the discharge injunction, as follows:

> The Court has carefully considered the arguments of the parties, [] the cases cited by the parties[, and] finds the reasoning and holding of the Finnie case persuasive, and agrees with that case. And the Court respectfully disagrees with the Lafferty case and the Nasusoko case, cited by the Debtor.
>
> The Court agrees with the Finnie case's conclusions that under the "plain meaning" of § 524(a)(2), that "statute's prohibitions apply only to actions taken by a creditor to collect *from* the debtor," and that "[a]bsent an agency relationship between the seller of a discharged debt and the purchaser of that debt, ... the seller of a discharged debt is not liable for the purchaser's subsequent attempt to collect on that debt." Finnie, 275 B.R. at 746 (italics in original) (footnote omitted).
>
> For these reasons, the Court concludes that DTE's sale of its discharged claim … was not a violation … of the discharge injunction under 11 U.S.C. § 524(a)(2).

613 B.R. at 649.

In Nassoko, however, the U.S. Bankruptcy Court for the Southern District of New York observed that "[t]here is substantial case law on the issue whether the purchase and sale of a discharged loan, leading to subsequent collection activity, can be a violation of the discharge injunction", and found "Finnie to be an overly restrictive construction of § 524(a)(2)", stating that: "Were § 524 to be applied as narrowly … no debtor could be free from harassment post-discharge. To avoid violation of the discharge injunction, a creditor could simply collect on a discharged debt indirectly by selling it to a third party, aware that the third party intended to pursue collection of the debt. The third party could then plead ignorance of the discharge, thereby purporting to insulate all parties from liability. See In re Gunter, 389 B.R. at 74. The Respondents are not entitled to summary rejection of the Motion." 405 B.R. at 520-522. The court further observed that "[i]n order for there to be a finding of contempt for the violation of § 524, a person must act willfully and with knowledge", and "ma[de] no finding that the Respondents acted with intent or knowledge," stating that such "issues [are] to be determined in a subsequent hearing." Id., at 522. Nevertheless, it noted that the debtor had plead a *prima facie* case as respondent E–

-27-

Loan "clearly had prior knowledge of the discharge, not only through the notice of discharge it received but also through its subsequent entry into a settlement with the Debtor", and respondents Capex and Peak5 had exchanged correspondence with the debtor "sufficient to establish that they knew that the debt might have been 'included in a bankruptcy proceeding,' " and "obviously made no effort to exclude bankruptcy-related debts from the purchase and sale agreement." Id., at 522-523.

In In re Reichgott, 2013 WL 5492532, at *4, 2013 Bankr. LEXIS 4127, at *10-11 (Bankr. N.D.Ohio 2013), an unsecured non-priority debt held by a bank was discharged. The bank subsequently transferred such debt to a third party. The U. S. Bankruptcy Court for the Northern District of Ohio found that "[t]o the extent … that the Bank effectuated a post-discharge transfer of the Plaintiff's account to Selene Finance, liability on the part of the Bank may exist for a violation of the discharge injunction". Id. Nevertheless, the court held that "the post-discharge transfer/assignment of an account by a creditor does not constitute a per se sanctionable violation of the discharge injunction. Instead, at a minimum, for a sanctionable violation of the discharge injunction to exist, a debtor is required to show that the creditor's conduct was contemptuous." Id. Dismissal of plaintiff's contempt claim for a violation of the discharge injunction was granted under Fed. R. Civ. P. 12(b)(6), with a proviso that they would be afforded the opportunity to seek leave to amend.

In considering the facts and circumstances of the instant adversary proceeding, the court concludes that the Letter does not constitute a demand for payment of a pre-petition discharged debt, threaten any 'immediate' action, is 'tantamount to a threat' or 'coercive', and thus is not a violation of the discharge order. The court also concludes that under the "plain meaning" of Section 524(a)(2), that "statute's prohibitions apply only to actions taken by a creditor to collect *from* the debtor". Having failed to plead actual or constructive notice on Santander Financial, this court cannot conclude that the selling of a debt was a deliberate act to collect on a discharged debt in willful violation of the discharge injunction. For these reasons, the court concludes that second and third prong of a *prima facie* discharge injunction violation claim are not satisfied. Dismissal

of the instant case is thus proper under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

(D)     Class Certification under Fed. R. Civ. P. 23

Fed. R. Civ. P. 23(c)(1)(A), made applicable to adversary proceedings under Fed. R. Bankr. P. 7023, requires that the court certify a class action "[a]t an early practicable time". Fed. R. Civ. P. 23(c)(1)(A). See also 3 William B. Rubenstein, Newberg and Rubenstein on Class Actions §§ 7:9-7:10 (6th ed., 2024). This adversary proceeding was brought as a class action pursuant to Fed. R. Civ. P. 23. See dkt. #31, pp. 14-16, ¶¶ 84-86 and (a). Although either plaintiffs or defendants may move for a class action determination, neither have done so in this case. This court has an independent obligation under Fed. R. Civ. P. 23(c)(1) to decide the issue and need not wait for the parties to so move. See C. Wright & A. Miller, 7AA Federal Practice and Procedure § 1785 (3rd ed., 2024); Martinez–Mendoza v. Champion Int'l Corp., 340 F.3d 1200, 1216, n. 37 (11th Cir. 2003) (noting that the court has " 'an independent obligation to decide whether an action was properly brought as a class action, even where ... neither party moves for a ruling on class certification.' ").

Having founds that dismissal of the complaint is appropriate under Fed. R. Civ. P. 12(b)(6) and (b)(7), the court declines to certify the proposed class. See William B. Rubenstein, Newberg and Rubenstein on Class Actions § 7:9 (6th ed., 2024) (collecting cases) ("Ruling first on dispositive motions is typically a more efficient procedure and will often render moot the necessity of a court ruling on certification."); See also e.g., Frith v. Whole Foods Market, Inc., 38 F.4th 263, 269 (1st Cir. 2022) (affirming dismissal prior to class certification); Brown v. United Airlines, Inc., 720 F.3d 60, 62 (1st Cir. 2013) (affirming dismissal prior to class certification).

CONCLUSION

Dismissal of the complaint is appropriate under Fed. R. Civ. P. 12(b)(7) for failure to join indispensable required parties and under Fed. R. Civ. P. 12(b)(6) for failure to state a *prima facie* willful violation of the discharge injunction under Section 524(a)(2) of the Bankruptcy Code, 11

U.S.C. § 524(a)(2). For the reasons stated herein, the *Motion to Dismiss* (dkt. #96) is GRANTED, and the instant adversary proceeding is dismissed.

The court declines to certify the proposed class.

Judgment will be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 5th day of December 2024.

Enrique S. Lamoutte
United States Bankruptcy Judge